


**PRIVILEGED AND CONFIDENTIAL**

September 22, 2020

Daniel Moreaux
Moreaux Transportation Services, Inc.
4486 FM 1006
Orange, Texas 77630

RE:   Moreaux Transportation Services, Inc., Case 20-20384, Western District of Louisiana

Dear Mr. Moreaux:

Thank you for selecting Stout Risius Ross, LLC ("Stout") to provide financial advisory services to Moreaux Transportation Services, Inc. (the "Debtor" or the "Company"). This letter shall confirm the understanding of the Company (the "Engagement Letter") concerning the engagement of Stout, the services to be provided by Stout and the manner in which Stout will be compensated for these services, effective as of September 21, 2020 (the "Effective Date").

<u>Objectives and Scope</u>

Subject to the Court's approval of Stout's Employment Application, Stout will serve as the Company's financial advisors to perform the services described below as well as any other services requested by the Company.

1. Assistance with record keeping and preparation of financial statements.

2. Review of the Debtors' financial information, including, but not limited to, analyses of invoices, cash receipts, disbursements, and financial statement items

3. Preparation of filings required by the Bankruptcy Court or the Office of the United States Trustee, including, but not limited to, schedules of assets and liabilities, statements of financial affairs and monthly operating reports.

4. Financial advisory services including the preparation of a liquidation analysis, and a monthly analysis of the Company's financial information (including analysis of significant changes financially, operationally or otherwise).

5. Assistance with preparation of the Debtor's proposed business plan and financial projections.

6. Assistance in preparing and/or reviewing documents necessary for confirmation.

7. Assist with the claims resolution procedures, including, but not limited to, analyses of creditors' claims by type and entity.

8. Other such functions as requested by the Company or its counsel to assist the Company in this Chapter 11 case.

**EXHIBIT B**

The Company and Stout agree that the Company may limit or expand the scope of our services from time to time on terms mutually acceptable to the parties in writing.

This engagement will be led by Stout's Managing Director John D. Baumgartner. Meggen Rhodes will be the lead Stout professional on this engagement.

Fees and Expenses

In consideration of the services Stout provides to the Company pursuant to this Engagement Letter, Stout shall be entitled to receive, and the Company shall pay to Stout, the following compensation:

1. For this engagement, Stout will bill time as incurred on a monthly basis at the following hourly rates, depending on the experience level of each professional. These rates will be subject to adjustment on October 1st of each year, beginning in 2021:

| Level | Rate Per Hour |
| --- | --- |
| Managing Directors | $400 - $550 |
| Directors | $325 - $350 |
| Managers | $250 - $325 |
| Senior Associates | $185 - $250 |
| Staff Associates | $150 - $200 |
| Para-professionals | $75 - $95 |

2. For this engagement, due to the unique circumstances of the Company and case, Stout agrees to bill John D. Baumgartner at $425 per hour and Meggen Rhodes at $250 per hour.

3. In addition to the fees described above, the Company agrees to promptly reimburse Stout, upon request from time to time, for all out-of-pocket expenses reasonably incurred by Stout in connection with the matters contemplated by this Engagement Letter including, without limitation, reasonable fees of counsel. Out-of-pocket expenses shall include, but not be limited to, all reasonable travel expenses, duplicating charges (including graphic design charges), on-line service charges (including data room charges), messenger and delivery services, meeting services and long-distance telephone and facsimile charges incurred by Stout.

Wire Transfer

All payments required hereunder shall be paid by wire transfer unless otherwise permitted by us. Set forth below are our funds transfer instructions:

Stout Risius Ross, LLC
BMO Harris Bank

ACH & Wire ABA Number: 071000288
Account Number: 3998895

## Bankruptcy Court

The Company, as soon as practicable following the execution of this Engagement Letter by the Committee, shall seek an order authorizing the employment of Stout pursuant to the terms of this Engagement Letter, as a professional person pursuant to (and subject to the standard of review of) Section 328(a) of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders. The Company shall use its best efforts to cause such application to be considered promptly. The employment application and the order authorizing employment of Stout shall be provided to Stout sufficiently in advance of their filing, and must be acceptable to Stout in its discretion. If the order authorizing the employment of Stout is obtained, the Company shall pay all fees and expenses as promptly as possible in accordance with the terms of this Engagement Letter, any orders entered in the Chapter 11 cases regarding reimbursement of professionals, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with Stout to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. If the order authorizing the employment of Stout is not obtained (or is later reversed or set aside for any reason), Stout may terminate this Engagement Letter and the Company shall reimburse Stout for all fees and expenses reasonably incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders. The terms of this paragraph are solely for the benefit of Stout and may be waived, in whole or in part, only by Stout.

## Term of Engagement

This Engagement Letter shall extend until the entry of an order by the Bankruptcy Court approving a Chapter 11 plan of reorganization (the "Plan Approval Date") unless earlier terminated upon thirty (30) days' written notice by the Company. After the Plan Approval Date, this Engagement Letter may be terminated by either the Company or Stout upon thirty (30) days' written notice by the Company or Stout without liability or continuing obligation; provided, however, that termination of this Engagement Letter shall not affect (a) the Company's indemnification, reimbursement, contribution and other obligations as set forth in this Engagement Letter; (b) the confidentiality provisions set forth herein; and (c) Stout's right to receive, and the Company's obligation to pay, any and all fees and expenses accrued as of the effective date of termination of this Engagement Letter.

## Entire Agreement, Waiver, Modification, and Notices

This Engagement Letter, including any Exhibits, constitutes the final and complete expression of the parties with respect to its subject matter and supersedes and replaces any other written or oral agreement or understanding between the parties. This Engagement Letter may be amended, modified, supplemented or waived only by a written instrument signed by both parties. No waiver of a breach hereof shall be deemed to constitute a waiver of a future breach, whether of a similar or a dissimilar nature. All notices, demands or other communications which are required or are permitted to be given in this Agreement shall be in writing and shall be deemed to have been sufficiently given (i) upon personal delivery, (ii) the third business day following due deposit in the U.S. mail, postage prepaid, and sent certified mail, return receipt requested, correctly addressed or (iii) when receipt is acknowledged if sent via facsimile transmission. Notices to you shall be sent to the address set forth on page one of this Engagement Letter with a copy to Committee counsel.

To the extent of any inconsistency between the terms of this Engagement Letter (including the attached Professional Terms), and any Order of the Bankruptcy Court, the Order of the Bankruptcy Court authorizing our employment shall govern.

## Indemnification

The Debtor agree to indemnify and hold harmless Stout and its affiliates, and their respective past, present and future directors, officers, shareholders, employees, agents and controlling persons within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to the engagement, any actions taken or omitted to be taken by an Indemnified Party (including acts or omissions constituting ordinary negligence) in connection with the engagement, or any Sale or proposed Sale contemplated thereby. In addition, the Debtor agree to reimburse the Indemnified Parties for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, the Debtor shall not be liable under the foregoing for any loss, claim, damage or liability which is finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.

If for any reason, the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, the Debtor shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Debtor, on the one hand, and Stout, on the other hand, in connection with the services rendered by Stout. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law or otherwise, then the Debtor shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Debtor, on the one hand, and Stout, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, the aggregate contribution of all Indemnified Parties to any such losses, claims, damages, liabilities and expenses shall not exceed the amount of fees actually received by Stout pursuant to the Engagement Letter.

The Debtor shall not affect any settlement or release from liability in connection with any matter for which an Indemnified Party would be entitled to indemnification from the Debtor, unless such settlement or release contains an unconditional release of the Indemnified Parties reasonably satisfactory in form and substance to Stout, from all liability to the party being settled with in connection with such matter. The Debtor shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action without the Debtor's prior written consent.

Prior to entering into any engagement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant proportion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Debtor set forth in this Engagement Letter, the Debtor will notify Stout in writing thereof (if not previously so notified) and, if requested by Stout, shall arrange in connection therewith alternative means of providing for the obligations of the Debtor set forth herein, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to Stout.

The Debtor further agrees that neither Stout nor any other Indemnified Party shall have any liability, regardless of the legal theory advanced, to the Debtor or any other person or entity (including the Debtor's equity holders and creditors) related to or arising out of Stout's engagement, except for any liability for losses, claims, damages, liabilities or expenses incurred by the Debtor, which either (a) is finally judicially determined to have resulted primarily from, or (b) is agreed by such Indemnified Party to have resulted primarily from, the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.

The obligations of the Debtor set forth herein shall apply to any modifications of the Engagement Letter and shall be in addition to any liability, which the Debtor may otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Debtor and each Indemnified Party. The foregoing provisions shall survive any termination of the relationship established by the Engagement Letter.

*  *  *  *  *  *

Please indicate your agreement with the terms of this letter (including the Professional Terms), subject to approval of the Bankruptcy Court, by signing and returning to me the enclosed copy of this letter. We appreciate the opportunity to be of service to you and look forward to working with you on this important project. Please note that this offer will terminate 60 days from the date of this letter, and shall be of no further force or effect unless expressly reinstated by us.

Very truly yours,

**STOUT RISIUS ROSS, LLC**

By: _/s/ John D Baumgarth_

Attachments: Professional Terms

Acknowledged and Accepted:

**Moreaux Transportation Services, Inc.**

Signed: _____

Name: Daniel Moreaux_____

Title: _____

Date: _____

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

20-20384 - #25-2  File 09/29/20  Enter 09/29/20 15:16:20  Exhibit B Pg 6 of 9

# STOUT RISIUS ROSS, LLC PROFESSIONAL TERMS

**1. Our Services**  We will provide the services as described in our engagement letter, as may be modified from time to time by mutual consent.

**2. Independent Contractor**  We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our services.  We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, disability insurance and other applicable employee withholdings.

**3. Fees and Expenses**  Our fees, out-of-pocket expenses, and payment terms are set out in our engagement letter.  Those fees do not include taxes.  You will be responsible for and pay all applicable sales, use, excise, value added and other taxes associated with the provision or receipt of the services, excluding taxes on our income generally.

**4. Confidentiality**  With respect to any information supplied in connection with this engagement and designated by any party as confidential, or which the other party(s) should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure, the other party(s) agree to protect the confidential information in a reasonable and appropriate manner, and use confidential information only to perform its obligations under this engagement and for no other purpose.  This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) disclosed by a third party without restriction, (iv) independently developed, or (v) disclosed pursuant to legal requirement or order.  Following the completion of our engagement, but not before such time, we may mention the name of the Company and/or use the Company logo and provide a general description of the engagement in our printed or electronic materials, or in our marketing presentations to others.

We are not to be characterized as an "expert" for purposes of securities law and we are not to be referred to, either by name or inference, in any public (e.g., S-1) or nonpublic security filing or private placement.  (Any such disclosure document is defined herein as a "Filing".)  Moreover, we are not obligated to provide, nor will we provide, any consent to be named in any such Filing either during the performance of our services or after the conclusion of our engagement.

**5. Use of Financial & Other Information / GAAS**  In the course of our engagement, we will use financial and other information, including prospective financial information, obtained from you, the Company, and/or your representatives, and other public and private sources.  The scope of our work will not enable us to accept responsibility for the accuracy and completeness of such information, and it is understood that we will have no duty of independent investigation or verification of such information.  While our work may involve analysis of various records, our engagement does not include an examination in accordance with generally accepted auditing standards known as "GAAS."  Furthermore, we will take no responsibility for the achievability of any expected, forecasted, projected, or hypothetical results anticipated or assumed by the management of the Company, whether relied upon by us or not.

**6. Our Work Product and Your License**  Upon full payment of all amounts due us in connection with this engagement, the work product prepared by us for you in connection with our services will become your property, except as set forth below.  Our work papers will not constitute work product and will remain our sole and exclusive property.  We will retain sole and exclusive ownership of all right, title and interest in our proprietary information which will not constitute work product, including such information as existed prior to the delivery of our services and, to the extent such information is of general application, anything which we may discover, create or develop during our provision of services for you.  To the extent our deliverables to you contain our proprietary information, we grant you a non-exclusive, non-assignable, royalty-free license to use the proprietary information provided by us in the work product and the subject of the engagement and for no other or further use without our express, prior written consent.

**7. Our Warranty**  We warrant that our services will be performed with reasonable care in a diligent and competent manner.  Our sole obligation will be to correct any non-conformance with this warranty, provided that you give us written notice within 60 days after the services are performed or, if applicable, deliverables are delivered.  The notice will specify and detail the non-conformance and, if you and we agree that a non-conformance exists, we will have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance.

We do not warrant and are not responsible for any third party products or services.  Your sole and exclusive rights and remedies with respect to any third party products or services are against the third party vendor and not against us.

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE.

**8. Liability and Indemnification**  (a) The Company, its successors and assigns, will to the fullest extent allowable by law, defend, indemnify, and hold harmless Stout, its

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

20-20384 - #25-2  File 09/29/20  Enter 09/29/20 15:16:20  Exhibit B Pg 7 of 9

Daniel Moreaux
September 22, 2020
Page 8

owners, employees, contractors, and agents (each an "Indemnified Party") from any and all obligations, charges, claims, losses, costs, fees, expenses, damages, and liabilities (including reasonable attorneys' fees and costs) (collectively, "Losses") relating to, or arising out of, or directly or indirectly in consequence of, as a result of our services or this engagement, regardless of the cause of the alleged injury or damage (INCLUDING ANY LOSS, CLAIM, DAMAGE, LIABILITY OR COST SUSTAINED OR INCURRED AS A RESULT OF OUR NEGLIGENCE) , except to the extent such Losses are finally determined by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct or omissions of an Indemnified Party.

(b)     Neither of us will be liable for any delays or failures in performance due to circumstances beyond our reasonable control.

(c)     Our total liability relating to this engagement will in no event exceed an amount equal to the fees we receive for the portion of the engagement giving rise to liability, and will not include any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).

(d)     Any action against either of us by the other in connection with this engagement must be brought within 18 months after the cause of action arises.

**9. Response to Subpoena**  In the event we are required to respond to a subpoena (e.g., producing documents in our possession, providing testimony, cooperating with your legal counsel, etc.) related to this engagement (regardless of whether such subpoena is served during or subsequent to the completion of our work), we will invoice you at our standard hourly rates applicable at the time such services are rendered.  We will also invoice you for our related out-of-pocket expenses, including, but not limited to, copying charges, courier fees, travel expenses and attorney fees.

**10. Non-Solicitation**  During the term of this engagement, and for a period of one year following its expiration or termination, you will not actively solicit, employ or otherwise engage any of our employees (including former employees) who were involved directly in the engagement.

**11. Termination**   (a) Any party may terminate our engagement at any time upon 10 days written notice.

(b)     Stout Risius Ross, LLC may suspend or terminate this engagement immediately and without notice in the event of non-payment of amounts due us.

(c)     You will pay us for all services rendered, expenses incurred or commitments made by us to the effective date of termination, and will reimburse us for all reasonable costs associated with any termination.

**12. Our Financial Interest / Compensation**  None of our employees who will work on this engagement have any known financial interest in the Company or the outcome of our analysis, and our compensation is neither based upon nor contingent upon the conclusions we reach.  We do not warrant or predict results or final developments in this matter.

**13. Staffing**  While we will attempt to comply with your requests for specific individuals, we retain the right to assign and reassign our personnel, as appropriate, to perform the services.

**14. General**  (a) These Professional Terms, together with the engagement letter, including all its attachments, constitute the entire understanding and agreement between us with respect to the services and deliverables described in the engagement letter, supersede all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by all parties.  If there is a conflict between these Professional Terms and the terms of the engagement letter, these Professional Terms will govern.

(b)     No term of this agreement will be deemed waived, and no breach of this agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c)     The terms of this agreement which by their nature are to survive this agreement will survive its expiration or termination.

(d)     We will retain files related to this engagement in accordance with our document retention policy.

(e)     We each acknowledge that we may correspond or convey documentation via Internet e-mail and that none of the parties has control over the performance, reliability, availability, or security of Internet e-mail.  Therefore, none of the parties will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(f)     We are not authorized to practice law or provide legal advice.  No services provided under this agreement are intended to be, nor should be construed to be, legal services.

(g)     Any delay or failure on our part to perform the obligations provided herein shall be excused if we are unable to provide the deliverable as the result of an event or occurrence beyond our reasonable control and without our fault or negligence, including, but not limited to, acts of God, actions by any governmental authority (whether valid or invalid), fires, floods, windstorms, epidemics, pandemics, explosions, riots, natural disasters, wars, sabotage, labor problems (including lockouts, strikes and slowdowns); provided that written notice of such delay (including the anticipated duration of the delay) shall be given to the Company as soon as possible after the event or occurrence (but in no event more than 10 days thereafter).  If requested by Company, we shall, within 10 days, provide adequate assurances that the delay shall not exceed 30 days.  If the

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

20-20384 - #25-2  File 09/29/20  Enter 09/29/20 15:16:20  Exhibit B Pg 8 of 9

delay lasts more than 30 days or we do not provide adequate assurance that the delay will cease within 30 days, Company may immediately terminate this agreement without liability beyond the time and expenses incurred to date.

(h) All of our respective rights and duties and all controversies and claims in connection with this engagement will be determined in accordance with the laws of the State of Texas.

\* \* \* \* \* \*