# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

|  |  |
|---|---|
| In re: | Chapter 11, Subchapter V |
| **MOREAUX TRANSPORTATION SERVICES, INC.** | Case No. 20-20384 |
| Debtor. | |

## PLAN OF REORGANIZATION
## OF MOREAUX TRANSPORTATION SERVICES, INC.

This Plan of Reorganization is presented to inform you of the proposed Plan for restructuring the debt of Moreaux Transportation Services, Inc., and to seek your vote to accept the Plan. You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY [OBJECTION DATE/TIME].**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [DEADLINE]. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: GOLD, WEEMS, BRUSER, SUES & RUNDELL, ATTN: BRADLEY L. DRELL, POST OFFICE BOX 6118, ALEXANDRIA, LA 71307-6118.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____, AT THE UNITED STATES BANKRUPTCY COURT, 611 BROAD STREET, LAKE CHARLES, LA 70601.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

*December 21, 2020*

*Bradley L. Drell*
*Heather M. Mathews*
*2001 MacArthur Drive*
*Alexandria, LA 71301*
*Telephone: (318) 445-6471*

# TABLE OF CONTENTS

Page #

Table of Contents…………………………………………………………………………2

Article I…………………………………………………………………………………3

Article II………………………………………………………………………………...5

Article III       The Plan……………………………………………………………10

        A.       Treatment of Allowed Unclassified Claims…………………………………10

        B.       Classification of Claims and Equity Interests……………………………11

        C.       Treatment of Claims and equity Interests…………………………………...11

        D.       Means for Implementation of the Plan………………………………...17

        E.       Distributions on Claims and Resolution of Disputed Claims……………………20

        F.       Voting on the Plan……………………………………….……………………22

        G.       Executory Contracts and Unexpired Leases…………………………………...22

Article IV       Feasibility of Plan……………………………………….……………………24

Article V       Liquidation Analysis……………………………………….………………………24

Article VI       Discharge……………………………………………….……………………24

Article VII       General Provisions…………………………………….………………………25

Article VIII       Attachments…………………………………….………………………..27

# ARTICLE I

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

**1.1.**    **Nature of the Debtor's Business.**

      **Moreaux Transportation Services, Inc.** ("**Debtor**") owns and operates a petrochemical trucking and transportation logistics company with operations centered in Orange, Texas, and Iowa, Louisiana.

**1.2.**    **History of Business Operations of the Debtor.**

      The Debtor is a second-generation company which was founded in the late 1970s by the father of its current president, Daniel Moreaux. The company is focused primarily on short-haul operations in southeast Texas and southwest Louisiana, and maintains current licensure as appropriate for its transportation operations.

      Debtor currently has approximately 28 employees, and operates approximately 43 trucks and 82 trailers. Approximately 30% of Debtor's gross sales are attributed to its subcontractor and affiliate, Transcoastal Logistics, LLC, which brokers and pays trucks and drivers for contracted loads. The business is family-operated, with Mr. Moreaux's father, mother, and siblings handling day-to-day operations or driving for the company.

**1.3.**    **Filing of the Debtor's Chapter 11 Case.**

      On September 21, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11, Subchapter V case is pending in the Bankruptcy Court in Lake Charles, Louisiana.

**1.4.**    **Legal Structure and Ownership.**

      Daniel Moreaux owns 100% of the Debtor, and serves as its president. There are no other officers.

**1.5.**    **Debtor's Assets.**

      Debtor owns no real property, and estimates its personal property (or its interest in such) to be valued at $2,970,000.00. The majority of the Debtor's personal property is equipment (trucks and trailers) subject to finance arrangements.

**1.6.**    **Debtor's Liabilities.**

      Debtor estimates it has incurred approximately $2,962,953.21 in secured debt, mostly involving equipment finance arrangements. Debtor also received an Economic Injury Disaster Loan from the Small Business Administration in the amount of $150,000.00.

Debtor estimates it has incurred $944,258.58 in unsecured debt. This figure includes prepetition amounts due for insurance premiums and to its key subcontractor, totaling approximately $165,000, which vendors were deemed critical, and which claims have been satisfied. The key remaining claims are a Payroll Protection Program ("PPP") loan in the amount of $171,744.00, and claims involving a number of Merchant Cash Advance ("MCA") Agreements. Debtor instituted an adversary proceeding against counterparties to the MCA Agreements (Adv. Proc. No. 20-02008) in the U.S. Bankruptcy Court, Western District of Louisiana, Lake Charles Division. Debtor's Complaint seeks, *inter alia*, a declaration regarding the status of the MCA counterparties as secured or unsecured, and the extent and validity of their liens and claims. Debtor anticipates that all but two of these parties will be deemed unsecured, and confirmation of this Plan will resolve the adversary proceeding.

## 1.7.  Current and Historical Financial Conditions.

In the months leading to the bankruptcy filing, as a result of the factors set forth in Section 1.8, Debtor was often cash-strapped, and had difficulty from an administrative standpoint in managing its various debts. During the bankruptcy process, Debtor has greatly benefited from the retention of a financial advisor who has organized Debtor's financial records and prepared various financial reports, including monthly operating reports and projections which reflect that Debtor's cash position is expected to continually improve during the first quarter of 2021. As COVID-19 becomes less of a factor in commerce, Debtor anticipates revenue will increase. Debtor's most recent monthly operating report is attached as Exhibit A.

## 1.8.  Events Leading to the Filing of the Bankruptcy Case.

The Subchapter V, Chapter 11 filing was necessitated by the effects of the COVID-19 pandemic, which significantly disrupted almost every industry, and with cumulative impacts resulting in a substantial, immediate downturn in the oil industry. Consequently, Debtor was left with insufficient funds to service its debts (both secured and unsecured) to various creditors under merchant cash agreements ("MCAs") and other similar arrangements, which resulted in Debtor's entry into additional similar agreements, all yielding additional debts without adequate cash flow to service same. The onerous repayment terms of the MCAs contributed greatly to the Debtor's cash flow insolvency, and ultimately lead to a dearth of cash to continue the company's business. Pre-bankruptcy, Debtor was affected by Hurricane Laura, which devastated southeast Louisiana and caused Debtor to lose more than one week of revenue.

## 1.9.  Significant Events During the Bankruptcy Case.

Significant events during the bankruptcy case include the following:

1. On October 1, 2020, and on November 9, 2020, the court entered interim and final orders, respectively, authorizing the retention of Stout Risius Ross, LLC, as financial advisor to the Debtor.

2. On October 1, 2020, and on October 22, 2020, the court entered interim and final orders, respectively, authorizing TBS Factoring Service, LLC ("TBS"), Debtor's

4

prepetition factor and secured creditor, to continue in a factoring relationship with Debtor.

3. On October 20, 2020, Debtor filed a Complaint against multiple MCA counterparties (Adversary Case No. 20-02008), seeking to have the MCA agreements deemed usurious loans under applicable law, seeking rescission, claiming unjust enrichment, and raising claims under the Bankruptcy Code (including avoidance of sales under 11 U.S.C. § 544(b), avoidance of payments under 11 U.S.C. § 548, avoidance of transfers under 11 U.S.C. § 547, avoidance of payments under 11 U.S.C. § 547, and avoidance of claims), as well as requesting declaratory judgment as to the validity and priority of liens to be accorded these counterparties, if any.

## ARTICLE II

## DEFINITIONS

For purposes of the Plan (as defined below), the following terms shall have the meanings specified in this section. A capitalized term used but not defined in the Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code. The rules of construction in Section 102 of the Bankruptcy Code apply to the terms of the Plan. The Plan headings are for reference only and shall not limit or otherwise affect the provisions the Plan.

**2.1** "Administrative Expense Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and the allowed claim of the Trustee for fees and/or reimbursements.

**2.2** "Affiliate" shall mean any Person that is an affiliate of the Debtor or the Reorganized Debtor under the Bankruptcy Code.

**2.3** "Allowed" shall mean, with reference to any Claim or Equity Interest:

(a) a Claim or Equity Interest that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim or Equity Interest as to which a proof of claim has been filed;

(b) a Claim or Equity Interest as to which a timely proof of claim or interest has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

5

(c)    a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)    any Claim or Equity Interest expressly allowed under the Plan, pursuant to the Confirmation Order or pursuant to a Final Order of the Bankruptcy Court.

**2.4**    "Asset(s)" shall mean any real or personal property of the Debtor, whether tangible or intangible and wherever situated, together with the proceeds thereof.

**2.5**    "Avoidance Actions" shall mean all causes of action under chapter 5 of the Bankruptcy Code.

**2.6**    "Bankruptcy Case" shall mean the chapter 11, subchapter V bankruptcy proceedings pending in the Bankruptcy Court under docket number 20-20384.

**2.7**    "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**2.8**    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Western District of Louisiana, Lake Charles Division.

**2.9**    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**2.10**    "Bar Date" shall mean November 20, 2020, the date fixed by order of the Bankruptcy Court as the last date by which Persons asserting certain Claims against the Debtor must file a proof of claim or interest or be forever barred from asserting a Claim against the Debtor or its property.

**2.11**    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the State of Louisiana.

**2.12**    "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

**2.13**    "Causes of Action" shall mean, without limitation, any and all actions, causes of action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, Avoidance Actions.

**2.14**    "Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated,

fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

      **2.15**   "<u>Class</u>" shall mean those classes designated in the Plan.

      **2.16**   "<u>Collateral</u>" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not: (a) subject to avoidance under the Bankruptcy Code, or (b) otherwise invalid under the Bankruptcy Code or applicable law.

      **2.17**   "<u>Confirmation Date</u>" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

      **2.18**   "<u>Confirmation Order</u>" shall mean the order of the Bankruptcy Court confirming the Plan, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

      **2.19**   "<u>Contingent or Unliquidated Claim</u>" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or for which the event that would give rise to such a liability or debt has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

      **2.20**   "<u>Cure</u>" shall mean the amount necessary to cure any defaults in an executory contract or unexpired lease so that such contract or lease may be assumed pursuant to Section 365(b)(1) of the Bankruptcy Code.

      **2.21**   "<u>Debtor</u>" shall mean Moreaux Transportation Services, Inc., including, from and after the Effective Date, in its capacity as Reorganized Debtor.

      **2.22**   "<u>Disputed Claim</u>" shall mean:

         (a)   if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

         (b)   if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order.

      **2.23**   "<u>Effective Date</u>" shall mean the first Business Day after the fourteenth (14th) day following the Confirmation Date, provided that no stay of the Confirmation Order has been granted.

      **2.24**   "<u>Equity Interest</u>" shall mean an ownership interest in the Debtor.

**2.25** "Estate" shall mean the estate created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

**2.26** "Executory Contracts" shall mean all unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**2.27** "Final Order" shall mean an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**2.28** "General Unsecured Claim" shall mean a Claim that is: (a) not a Secured Claim, (b) not entitled to priority of payment under Section 507 of the Bankruptcy Code, and (c) not a Claim for an Equity Interest.

**2.29** "Insider" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

**2.30** "Lien" shall have the meanings set forth in Sections 101(36) and (37) of the Bankruptcy Code; provided that: (a) a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) no lien shall be valid unless approved by a Final Order of the Bankruptcy Court or by agreement of the Debtor.

**2.31** "Loan Documents" shall mean all documents evidencing a Secured Claim and/or the Lien securing such Claim, executed by the Debtor prior to the Petition Date, including, without limitation, notes, loan agreements, mortgages, security agreements, financing statements, guarantees, swap agreements, as well as settlement agreements and stipulations executed in connection with such Secured Claim and/or Lien, and all other documents executed in connection with such Secured Claim and/or Lien.

**2.32** "Organization Documents" shall mean, as applicable, the Debtor's operating agreements, trust agreements, articles of incorporation, bylaws, corporate minute books and such other documents evidencing the Debtor's formation and/or operation in such jurisdictions in which the Debtor is authorized to conduct business.

**2.33** "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

**2.34** "Petition Date" shall mean September 21, 2020.

**2.35** "Plan" shall mean this Plan of Reorganization of Moreaux Transportation Services, Inc., including, without limitation, all exhibits, supplements, appendices and schedules to the Plan, either in their present form or as the same may be altered, amended or modified.

8

**2.36** "Priority Claims" shall mean all Claims, if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

**2.37** "Priority Tax Claim" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**2.38** "Professionals" shall mean those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

**2.39** "Professional Fee Claims" shall mean the fees and expenses of Professionals under Sections 330, 331, or 503 of the Bankruptcy Code approved by an Order of the Bankruptcy Court.

**2.40** "Property" shall mean, collectively, all real and personal property owned by the Debtor. All references to the "Property" shall be deemed to mean all or any portion of such Property.

**2.41** "Reorganized Debtor" shall mean the Debtor after the Effective Date.

**2.42** "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor with the Bankruptcy Court as such schedules, lists and statements have been or may be supplemented or amended from time to time.

**2.43** "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**2.44** "Trustee" shall mean Lucy G. Sikes, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**2.45** "Voting Deadline" shall mean the deadline for submitting ballots with respect to the Plan that is established by the Bankruptcy Court.

# ARTICLE III

## THE PLAN

### A. Treatment of Allowed Unclassified Claims

**3.1    Non-Classification.**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for the purposes of voting on, or receiving distributions under, the Plan.  All such Claims are instead treated separately in accordance with the terms set forth in this Article III.

**3.2    Administrative Expense Claims.**

(a) <u>General</u>. Except for Professional Fee Claims and except as otherwise agreed to by the Debtor and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the later of: (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms; (ii) the Effective Date.

(b) <u>Professional Compensation and Expense Reimbursement Claims</u>.    Each Professional shall file an application for the allowance of compensation for services rendered or reimbursement of expenses incurred.  Any such application granted by the Bankruptcy Court shall be paid in Cash through this Plan: (i) within fifteen days of the entry of the order of the Bankruptcy Court approving such application, unless a stay of the order approving the application is obtained; or (ii) upon such other terms as may be mutually agreed upon between the Professional and the Debtor or Reorganized Debtor.

**3.3    Priority Tax Claims.**

Each holder of an Allowed Priority Tax Claim will receive in full satisfaction of such claim (a) payments in cash, in regular monthly installments over a period ending not later than five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the amount of such Allowed Claim; (b) a lesser amount in one cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; provided, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Priority Tax Claim or that is less favorable than the treatment provided to the most favored unsecured claims under the Plan.

Debtor is not aware of any Priority Tax Claims, and the estimated value for these claims is $0.

**B. Classification of Claims and Equity Interests**

The Claims against and Equity Interests in the Debtor are categorized below pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.

### 3.4 Claim and Equity Interest Categories.

Claims against the Debtor have been classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1-A | Secured Claims of Certain Lenders, Knight Capital Funding III, LLC, and Radium2 Capital, LLC and Radium2 SPV#1, LLC | Impaired | Yes |
| 1-B | Secured Claims of MCA Counterparties | Impaired | Yes |
| 2 | General Unsecured Claims | Impaired | Yes |
| 3 | Equity Interest Holder | Unimpaired | No |

### 3.5 Elimination of Vacant Classes.

Any Class of Claims or Equity Interests that does not contain as of the Confirmation Date, a holder of an Allowed Claim or Equity Interest, or a holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes.

**C. Treatment of Claims and Equity Interests**

### 3.6 Class 1-A – Secured Claims of Certain Lenders and Knight Capital Funding III, LLC, and Radium2 Capital, LLC and Radium2 SPV#1, LLC

(a) Classification. Class 1-A consists of Secured Claims of Certain Lenders ("Certain Lenders," identified on the following table) and Knight Capital Funding III, LLC ("Knight"), and Radium2 Capital, LLC and Radium2 SPV#1, LLC (collectively "Radium"), the latter two with which Debtor entered settlement agreements before the Petition Date.

(b) Impairment and Voting. The Class 1-A Secured Claims are impaired under the Plan, and the holders of such Claims shall be entitled to vote to accept or reject the Plan.

11

(c) <u>Claim Treatment</u>.  Debtor estimates that Knight's claim is in the amount of $43,859.76, and that Radium's claim is in the amount of $136,334.62.  By agreement, Knight shall receive $30,000.00, and Radium shall receive $100,000.00, in full and final settlement of their respective Class 1-A Claims, which amounts shall be payable in equal quarterly installments over a period of five (5) years from the Effective Date.

(d) <u>Treatment of TBS Factoring Company</u>.  The secured claims of TBS Factoring Company have been satisfied by virtue of payments made pursuant to an order which allowed the Debtor to factor post-petition receivables and continue the pre-petition factoring arrangement post-petition.  This claim shall be deemed unimpaired and not entitled to vote on this Plan.

Each remaining holder of a Class 1-A Secured Claim shall receive 100% of the value of its Class 1-A Secured Claim, with the balance deemed unsecured.  Class 1-A Secured Claims will be satisfied with interest reamortized at a rate of 4.5%, over a period of five (5) years from the Effective Date, with the exception of the USA/SBA, which shall be amortized over thirty years in accordance with the Economic Injury Disaster Loan Program, with Cash payments to be made on a quarterly basis, beginning April, 1, 2021, as follows:

| Creditor | Account | Collateral | Secured Amount | Quarterly Payment | Total Payment |
|---|---|---|---|---|---|
| Amur Equip Finance | 7017 | 1-2006 Super WS Dump Truck | $87,716.00 | $4,811.46 | $96,229.25 |
| Blue Bridge Financial, LLC | 7011 | 2008 Quad KW Dump Truck | $85,000.00 | $4,663.01 | $93,260.25 |
| Bridge City State Bank | 4944 | 30 +/- Van Trailers | $132,787.23 | $7,284.57 | $145,691.46 |
| Bridge City State Bank | | 1-2006 Volvo 1-2007 Volvo | $47,642.50 | $2,613.62 | $52,272.31 |
| CIT Bank | | 1-2020 CPS Belly Dump Trailer | $36,000.00 | $1,974.92 | $39,498.47 |
| CIT Bank | 7012 | 1-2006 Quint STRL Dump Truck | $50,940.28 | $2,794.53 | $55,890.64 |
| CIT Bank NA (scheduled as "Richie Bros Financial Services") | 7020 | 1-2005 Super KW Dump Truck 1-2006 Super KW Dump Truck | $127,789.32 | $7,010.39 | $140,207.86 |
| CommunityBank of Texas, N.A. | 9970 | 4/5 Trucks & Dry Van Trailers | $71,248.14 | $3,908.60 | $78,172.02 |

| | | | | | |
|---|---|---|---|---|---|
| Crestmark | Star 7014 9204 | 2011 International Truck 1-2009 Quint FRHT Dump 1-2009 Quint FRHT Dump | $181,092.74 | $9,934.56 | $198,691.29 |
| First Financial Bank | 0222 | 2 Wabash Dry Van Trailers | $9,160.34 | $502.53 | $10,050.54 |
| First Financial Bank | 8093 | 2016 Chevrolet Colorado Z71 | $16,584.74 | $909.82 | $18,196.44 |
| First Financial Bank | 6725 | 2 Peterbilt Trucks | $21,256.06 | $1,166.09 | $23,321.72 |
| First Financial Bank | 8283 | 2006 Freightliner Truck | $12,900.60 | $707.68 | $14,153.62 |
| First State Bank | 4412 | Trucks and Dry Van Trailers | $43,197.01 | $2,369.74 | $47,394.89 |
| First State Bank | 5882 | 2-2006 Volvo Trucks | $10,923.92 | $599.28 | $11,985.50 |
| First State Bank | | 2-2000 Freightliner 1-1999 Freightliner 1-1999 Trim Trailer 1-1998 Utility Trailer 1-1997 Dorsey Trailer | $90,000.00 | $4,937.31 | $98,746.18 |
| GM Financial | 8093 | 2020 Chevrolet Silverado 1500 | $32,724.05 | $1,795.21 | $35,904.17 |
| JB&B Capital/ Pinnacle Bank | 7005 | 1-2006 TRI Pete Dump Truck | $32,033.27 | $1,757.31 | $35,146.26 |
| JB&B Capital/ Pinnacle Bank | 7013 | 1-2007 Quint KW Dump Truck | $62,053.55 | $3,404.19 | $68,083.90 |
| JB&B Capital/ Pinnacle Bank | 7021 | 1-2003 Quint WS Dump Truck | $61,781.31 | $3,389.26 | $67,785.20 |
| m2 Lease Funds LLC | 7016 | 1-2007 Quint INT Dump Truck | $64,694.88 | $3,549.10 | $70,981.91 |
| N. Mill Credit Trust | | 1-2020 CPS Belly Dump | $37,162.80 | $2,038.17 | $40,724.27 |

| | | Trailer | | | |
|---|---|---|---|---|---|
| N. Mill Credit Trust | | 1-2020 CPS Belly Dump Trailer | $45,758.00 | $2,510.24 | $50,204.75 |
| N. Mill Credit Trust | | 1-2020 Travis End Dump Truck | $37,268.15 | $2,044.49 | $40,889.86 |
| N. Mill Credit Trust | 7006 | 1-2006 Super KW Dump Truck | $93,865.77 | $5,149.38 | $102,987.62 |
| N. Mill Credit Trust | 7015 | 1-2009 Quint FRHT Dump Truck | $85,404.48 | $4,685.20 | $93,704.07 |
| Pawnee Leasing Corp. | 7004 | 1-2004 TRI Int Dump Truck | $65,515.90 | $3,594.14 | $71,882.72 |
| PNC Equipment Finance | 2010 | 10-2021 Stoughton Dry Vans | $336,055.77 | $18,435.68 | $368,713.59 |
| PNC Equipment Finance | | 5 Dry Van Trailers | $24,052.20 | $1,319.48 | $26,389.59 |
| PNC Equipment Finance | | 4 Dry Van Trailers | $23,328.28 | $1,279.77 | $25,595.32 |
| S&P Financial Services, Inc. (scheduled as "SLS Financial Services") | 7018 | 1-2009 Quint FRHT Dump Truck | $72,543.01 | $3,979.64 | $79,592.72 |
| Simmons Bank | | 1-2020 Travis End Dump Trailer | $36,184.11 | $1,985.02 | $39,700.47 |
| Smart Business Credit | 7003 | 1-2003 TRI Mack Dump Truck | $78,564.48 | $4,309.97 | $86,199.36 |
| Southgate Lease Services | 7022 | 1-2014 Quint KW Dump Truck | $74,805.49 | $4,103.75 | $82,015.07 |
| Southgate Lease Services | 7024 | 1-2014 Quint KW Dump Truck | $79,221.96 | $4,346.04 | $86,920.73 |
| TBS Factoring Company | | | Paid in accordance with the cash collateral and factoring order. | | |
| U.S. Small | 7408 | | $150,000.00 | $1,826.32 | $273,948.69 |

| | | | | | |
|---|---|---|---|---|---|
| Business Administration | | | | | |
| US Bank, N.A. d/b/a U.S. Bank Equipment Finance | 5154 | 1-2014 Quint KW Dump Truck 1-2017 CAT Skid Steer & Flatbed | $61,776.00 | $3,388.42 | $67,768.41 |

(e) <u>Loan Documents</u>.  The Covenants set forth in Exhibit D to the Plan shall apply to the Loan Documents of the Certain Lenders, Knight, and Radium.  As of the Effective Date, their Loan Documents shall be deemed amended and restated, without further action, as necessary to reflect and incorporate the terms of the Plan.  To the extent that these Loan Documents contain any terms, covenants, representations and warranties, and/or remedies that impose obligations upon the Debtor that are inconsistent with or more expansive than the terms of the Plan or the Covenants, such terms, covenants, representations and warranties, and/or remedies are deemed cancelled, and any obligations of the Debtor and/or Claims by the holder of the Allowed Secured Claim arising from such terms, covenants, representations and warranties, and/or remedies shall be discharged upon the Effective Date.

(f) <u>Prepayment</u>.  The Debtor may pre-pay the Class 1-A Secured Claims without penalty at any time prior to the 60th month following the Effective Date.

(g) <u>Retention of Liens</u>.  To secure the payment of the Class 1-A Secured Claims and except as specifically modified by the Plan, the holder of such Claim shall retain its Liens as of the Petition Date.

(h) <u>Discharge of Liens</u>.  Upon payment in full of the Class 1-A Secured Claims: (i) all Liens securing such Claim shall be deemed canceled, discharged and released, and (ii) the holder of such Claim shall be required to deliver to the Reorganized Debtor, within three (3) Business Days (or within such period agreed to by the Debtor) of the payment in full of such Claim, all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of the Liens that secured such Claim.

**3.7    Class 1-B – Allegedly Secured Claims of MCA Counterparties.**

(a) <u>Classification</u>.  Class 1-B consists of Allegedly Secured Claims of (1) AJ Equity Group, LLC; (2) Austin Business Finance, LLC, d/b/a GetBackd; (3) Business Funding Source; (4) Change Funding Group; (5) Liberty Capital Management, LLC, and (6) OnDeck Capital, Inc. (the "MCA Counterparties").

(b) <u>Impairment and Voting</u>.  The Class 1-B Claims are impaired under the Plan, and the holders of such Claims shall be entitled to vote to accept or reject the Plan.

15

(c) <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Secured Claims of the MCA Counterparties, the MCA Counterparties shall receive one of the following (i) treatment of such Claim (to the extent Allowed) as a General Unsecured Claim; (ii) treatment as agreed between the Debtor and the holder of the Claim; or (iii) to the extent Allowed as a Secured Claim, such additional or other treatment as may be necessary, as determined by the Bankruptcy Court, to permit the holder of the Secured Claim to realize the indubitable equivalent of such Claim.  In the absence of the entry of a Final Order by the Bankruptcy Court determining, pursuant to Section 506(a) of the Bankruptcy Code, or an agreement with the Debtor, that the MCA Counterparty holds an Allowed Secured Claim against the Debtor, the holder of the Secured Claim shall receive the treatment set forth in Section 3.7(c)(i) of the Plan.

(d) <u>Loan Documents</u>.  Unless the MCA Counterparty holds an Allowed Secured Claim, the MCA Counterparty's Loan Documents shall be cancelled as of the Effective Date, including all covenants, representations, warranties, and/or remedies, and all of the Debtor's obligations under such Loan Documents shall be discharged.  If the MCA Counterparty holds an Allowed Secured Claim: (i) the Covenants shall apply to MCA Counterparty's Loan Documents; (ii) as of the Effective Date, the MCA Counterparty's Loan Documents shall be deemed amended and restated, without further action, as necessary to reflect and incorporate the terms of the Plan; and (iii) to the extent that the MCA Counterparty's Loan Documents contain any terms, covenants, representations and warranties, and/or remedies that impose obligations upon the Debtor that are inconsistent with or more expansive than the terms of the Plan or the Covenants, such terms, covenants, representations and warranties, and/or remedies are deemed cancelled, and any obligations of the Debtor and/or Claims by the holder of the MCA Counterparty's Secured Claim arising from such terms, covenants, representations and warranties, and/or remedies shall be discharged upon the Effective Date.

(e) <u>Retention/Discharge of Liens</u>.  In the absence of the entry of a Final Order by the Bankruptcy Court determining, pursuant to Section 506(a) of the Bankruptcy Code, that the MCA Counterparty holds an Allowed Secured Claim against the Debtor: (i) all Liens securing the MCA Counterparty Secured Claim shall be deemed canceled, discharged and released as of the Confirmation Date, and (ii) the holder of the MCA Counterparty Secured Claim shall be required to deliver to the Reorganized Debtor, within three (3) Business Days (or within such period agreed to by the Debtor) of the Effective Date, all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of the Liens that secured such Claim. If the Bankruptcy Court enters a Final Order determining, pursuant to Section 506(a) of the Bankruptcy Code, that MCA Counterparty holds an Allowed Secured Claim against the Debtor or reaches an agreement with the Debtor regarding the same, the holder of such Claim shall retain the Liens held by MCA Counterparty as of the Petition Date until such Claim is paid in full pursuant to the terms of the Plan.

**3.8    Class 2 – General Unsecured Claims**

(a) <u>Classification</u>.  Class 2 consists of the General Unsecured Claims against the Debtor in the total approximate amount of $780,000.

(b) <u>Impairment and Voting</u>.  Class 2 is impaired under the Plan and each holder of a General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(c) <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed General Unsecured Claims, each holder of an Allowed General Unsecured Claim shall receive 100% of the value of its Allowed General Unsecured Claim, without interest, in equal quarterly installments beginning on April 15, 2021, and continuing each quarter for five years.

(d) Specific provision for PPP Loan with First Financial Bank.  The Debtor will apply for loan forgiveness of $22,569.32, and upon forgiveness the balance of the loan will be treated in accordance with subpart (c) above.

**3.9    Class 3 – Equity Interests**

(a) <u>Classification</u>.  Class 3 consists of Equity Interests in the Debtor.  The sole member of this class is Daniel Moreaux, the sole shareholder and president of the Debtor.

(b) <u>Impairment and Voting</u>.  Class 3 is unimpaired under the Plan and shall be deemed to accept the Plan.

(c) <u>Claim Treatment</u>.  The holder of the Equity Interests shall retain Equity Interests after the Effective Date of the Plan.

**3.10    Reservation of Rights.**

The Debtor reserves the right to, among other things, (a) contest the right of the holder of any Claim to vote on the Plan, or designate the vote of the holder of any Claim, (b) contest the right of the holder of any Claim to receive distributions under the Plan, (c) seek to subordinate any Claim for inequitable conduct or otherwise, and (d) seek to estimate any claim for any purposes under the Plan.

**D.  Means for Implementation of the Plan**

**3.11    Plan Implementation.**

(a) The Plan will be funded from the Debtor's continued operations and continued factoring with TBS Factoring Company.

(b) On Confirmation of the Plan, all property of the Debtor, tangible and intangible,

17

including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

### 3.12 Post-Confirmation Management.

The Post-Confirmation officer of the Debtor shall be Debtor's sole shareholder and president, Daniel Moreaux, with total compensation of $200,000 per year in salary and housing allowance, in addition to health insurance benefits and cell phone service via an account in the names of Otis J. Moreaux and Cheryl Moreaux, paid by Debtor.

### 3.13 Execution of Necessary Documents; Amendment of Documents.

(a) Confirmation of the Plan shall constitute authorization by the Bankruptcy Court for the Debtor and/or the Reorganized Debtor to enter into all documents, instruments and agreements necessary to effectuate the terms of the Plan. The form and/or content of the documents, instruments and agreements necessary to effectuate the terms of the Plan shall be subject to the approval of the Debtor and/or the Reorganized Debtor, in its sole discretion.

(b) As of the Effective Date, all pre-Confirmation Date documents and agreements (whether written or oral) between the Debtor and any party shall be deemed to be amended as necessary to effectuate and conform to the terms of this Plan. To the extent that there is any inconsistency between the Plan and any such documents and agreements, the terms of the Plan shall control.

(c) All matters provided for in the Plan involving any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred, and shall be in effect, without any requirement of further action by the Reorganized Debtor, its agents, representatives, members, managers, officers, directors or Affiliates.

(d) To the extent necessary, the Debtor's Organization Documents shall be deemed amended to prohibit the issuance of nonvoting equity securities, and to provide, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

### 3.14 Preservation and Resolution of Causes of Action.

(a) Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Final Order, or in any contract, instrument, release or other agreement entered into or

delivered in connection with the Plan, the Reorganized Debtor will exclusively retain and may enforce, and the Debtor and the Reorganized Debtor expressly reserve and preserve for these purposes, in accordance with section 1123(a)(5)(A) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action that the Debtor or its Estate may hold against any person or entity. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation or consummation of the Plan.

(b) After the Effective Date and except as otherwise provided in the Plan, the Reorganized Debtor is authorized, without further Bankruptcy Court order, to compromise, settle and/or otherwise dispose of any Causes of Action; provided that, until the Bankruptcy Case is closed, the Reorganized Debtor shall comply with Federal Rule of Bankruptcy Procedure 9019 with respect to any settlement of a Cause of Action.

(c) Confirmation of this Plan shall constitute a FRBP 9019 Compromise and/or resolution of the claims contained in *Moreaux Transportation Services, Inc. v. AJ Equity Group, LLC, et al*, Adversary Proceeding number 20-2008, with the claims of the Defendants being allowed in the following amounts on a secured or unsecured basis, as designated herein:

| Creditor | Allowed Claim Amount | Treatment |
|---|---|---|
| AJ Equity Group, LLC | $86,286.30 | General Unsecured |
| Austin Business Finance, LLC | $96,923.10 | General Unsecured |
| Business Funding Source | $62,464.00 | General Unsecured |
| Change Funding Group | Disallowed for failure to answer | Disallowed |
| Knight Capital Funding | $43,859.76 | Secured – Class 1-A |
| Liberty Capital Management | $108,866.64 | General Unsecured |
| OnDeck Capital Inc. | Disallowed for failure to answer | Disallowed. |
| Radium 2 Capital | $136,344.62 | Secured – Class 1-A |

As to Change Funding Group and OnDeck Capital, Inc., confirmation of this Plan shall constitute a default judgment in the adversary proceeding ruling that these claims are invalid. Additionally, upon confirmation of this plan, the Bankruptcy Court shall dismiss Adversary Proceeding number 20-2008 with prejudice. This Plan does not discharge any liability of any guarantor on any claim that is allowed under this Plan.

19

### 3.15 Default.

No event of default under the Plan shall occur unless, in the event of a breach of the Debtor's or the Reorganized Debtor's obligations under the Plan, the holder of the Allowed Claim asserting the default shall provide written notice of such breach to the Reorganized Debtor and such breach is not cured: (a) in the event of a breach that can be cured by the payment of a sum of money, within ten (10) Business Days of the Reorganized Debtor's receipt of such notice; and (b) for any other breach, within thirty (30) days of the Reorganized Debtor's receipt of such notice, provided that, if such non-monetary breach cannot reasonably be cured within such 30-day period and the Reorganized Debtor has commenced curing such breach and continues to cure such breach, the thirty (30) day period shall be extended for such time as is reasonably necessary to cure such breach.

## E. Distributions on Claims and Resolution of Disputed Claims

### 3.16 Payments.

**If the Plan is confirmed under § 1191(a),** payments to creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

**If the Plan is confirmed under section § 1191(b),** except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

### 3.17 Method of Distributions Under the Plan.

(a) <u>In General</u>. Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan to be made by, or on behalf of, the Reorganized Debtor to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules unless the Reorganized Debtor has been notified in writing of a change of address as of the distribution date, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. The Reorganized Debtor shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b) <u>Form of Distributions</u>. Except as otherwise provided in the Plan, any payment of Cash made by, or on behalf of, the Reorganized Debtor pursuant to the Plan shall be made by check or, upon agreement of the parties, by wire transfer.

(c) <u>Distributions on Business Days</u>. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next

succeeding Business Day.

**3.18    Allowance of Claims.**

(a)   Any holder of multiple Allowed Claims against the Debtor may be satisfied by one Allowed Claim that, in the aggregate, does not exceed the amount of the underlying Claim giving rise to such multiple Claims.

(b) Except as otherwise specifically provided in the Plan or an order of the Bankruptcy Court, no interest shall accrue on or be paid on account of an Allowed Claim.

**3.19    Claims Objections and Resolution.**

(a) Except as otherwise provided by order of the Bankruptcy Court, the Debtor, or the Reorganized Debtor as the case may be, may file an objection to a Claim against the Debtor within sixty (60) days after the Confirmation Date.

(b) No distribution will be made on account of a Disputed Claim unless such claim is Allowed by order of the Bankruptcy Court.

(c) After the Effective Date and except as otherwise provided in the Plan, the Reorganized Debtor is authorized, without further Bankruptcy Court order, to compromise, settle and/or otherwise dispose of any dispute regarding a Claim; provided that, until the Bankruptcy Case is closed, the Reorganized Debtor shall comply with Federal Rule of Bankruptcy Procedure 9019 with respect to any settlement of a disputed Claim.

**3.20    Estimated Number and Value of Claims Objections.**

The following are the estimated number of claims and amounts to which the Debtor anticipates objecting, by Class:

| Class | Number of Claims Objected To | Value of Claims Objected To |
|-------|------------------------------|-----------------------------|
| 1-A   | None                         |                             |
| 1-B   | None                         |                             |
| 2     | On Deck Capital, Inc.        | $22,100.00                  |

**3.21    Reversion of Unclaimed Checks.**

The amounts of any checks issued for distributions under the Plan that remain uncashed for a period of 180 days after the date of such distribution shall revert and be vested in the Reorganized Debtor free and clear of any claim or interest of any holder of a Claim under the Plan.

21

## F. Voting on the Plan

### 3.22   Voting of Claims.

Any creditor of the Debtor whose claim is deemed Impaired under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings.  Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

### 3.23   Acceptance by Impaired Classes.

An impaired class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims or actually voting in  such Class have voted to accept the Plan and (b) the holders (other than any holder designated  under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

### 3.24   Nonconsensual Confirmation.

If none of the impaired Classes are deemed to accept the Plan, the Debtor reserves the right (1) to seek confirmation of the Plan under Section 1191(b) of the Bankruptcy Code, or (2) to amend the Plan.

## G. Executory Contracts and Unexpired Leases

### 3.25   Assumption of Executory Contracts and Unexpired Leases.

The following table lists the Executory Contracts and Unexpired Leases to be assumed by the Debtor, with Cure amounts to be paid in Cash on the Effective Date of the Plan:

| Counterparty | Agreement | Cure Amount |
|---|---|---|
| Alliance Funding Group | Lease Agreement (Lease Number 20-11058) | Estimated:  $3,478.04 |
| TEAM Funding Solutions | | Estimated $15,588.36 |
| Moreaux Freedom | Lease   (4486   FM   1006, | $0.00 |

| | | |
|---|---|---|
| Investments, LLC | Orange, TX) | |
| Moreaux Freedom Investments, LLC | Lease (4687 Highway 14, Iowa, LA) | $0.00 |
| Moreaux Freedom Investments, LLC | Lease (415 Border, Orange, TX) | $0.00 |
| Moreaux Freedom Investments, LLC | Lease (155 N. 37th St., Orange, TX) | $0.00 |
| Daniel Moreaux and Macy Moreaux | Lease (5016 Bob Hall Rd, Orange, TX) | $0.00 |
| Del Sasso Construction | Month to Month Lease (105 & 106 Foreman Road, Orange, TX) | $0.00 |

### 3.26 Objections to Assumption of an Unexpired Lease or Executory Contract.

Any objection to the assumption of an Unexpired Lease or Executory Contract, the proposed Cure of any defaults, or the adequacy of assurance of future performance, must be filed and served within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

### 3.27 Payment of Allowed Claims Arising from Assumption of an Executory Contract or Unexpired Lease.

Allowed Claims arising from the assumption of an Executory Contract or Unexpired Lease which are in excess of the Cure amounts herein shall receive, in full and complete satisfaction, settlement, release and discharge of such Claims and at the election of the Debtor, payment: (a) in cash on the Effective Date of the Plan equal to the amount of such Claim; (b) in the ordinary course of business as and when such Allowed Claims become due; or (c) as agreed between the holder of such Claim and the Debtor.

### 3.28 Rejection Damages Claims.

Debtor does not anticipate rejecting any Executory Contracts or Unexpired Leases. However, if the rejection of an Executory Contract or Unexpired Lease by the Debtor results in a Claim by the other party or parties to such contract or lease, any claim for damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, the Reorganized Debtor and its Assets, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before thirty (30) days following the later to occur of: (a) the rejection of such Executory Contract or Unexpired Lease, or (b) the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed and which are Allowed will be treated as General Unsecured Claims subject to the provisions of the Plan. The Debtor or the Reorganized Debtor, as the case may be, shall have the right to object to any such Claim for rejection damages in accordance with the Plan.

## ARTICLE IV

## FEASIBILITY OF PLAN

**4.1**     **Ability to Initially Fund Plan.**

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

**4.2**     **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan.**

Debtor has provided projected financial information in Exhibit B. Debtor submits that the projections reflect, at a minimum, a reasonable likelihood that the Debtor will be able to make all payments under the Plan.

**4.3**     **Ability to Make Future Plan Payments and Operate Without Further Reorganization.**

The projections in Exhibit B show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $500,000. The Debtor would submit that the plan is feasible.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE V

## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claimants and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit C.

## ARTICLE VI

## DISCHARGE

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor

of all payments due within the first 3 years of the Plan (or such longer period not to exceed 5 years as the court may fix), unless the court approves a written waiver of discharge executed by the Debtor after the order for relief, the court shall grant the Debtor a discharge of all debts provided in § 1141(d)(1)(A), and all other debts allowed under section 503 and provided for in this Plan, except any debt (1) on which the last payment is due after the first 3 years of the plan (or such other time not to exceed 5 years fixed by the court); or (2) if applicable, of the kind specified in section 523(a).

## ARTICLE VII

## GENERAL PROVISIONS

### 7.1 Title to Assets.

If the Plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If the Plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 7.2 Binding Effect.

The Plan will bind the Debtor and all creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 7.3 Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 7.4 Controlling Effect.

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Louisiana

govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**7.5     Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the  following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**7.6     Notice of Occurrence of Effective Date.**

As soon as practicable following the Effective Date, the Debtor shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date.

**7.7     Notice of Substantial Consummation of Plan.**

Pursuant to § 1183(c)(2), not later than 14 days after the Plan of the Debtor is substantially consummated, the Debtor shall file with the Bankruptcy Court and serve on the Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation.

**7.8     Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**7.9     Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under § 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under § 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date (or such longer time not to exceed 5 years), as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**7.10**         <u>**Notices.**</u>

All notices, requests, and demands to or upon the Debtor or the Reorganized Debtor shall only be effective if in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

Moreaux Transportation Services, Inc.
Daniel Moreaux
P.O. Box 2952
Orange, TX 77630
Telephone: (409) 781-8400

**With copies to:**

Gold, Weems, Bruser, Sues & Rundell
Bradley L. Drell
2001 MacArthur Drive
Alexandria, LA 71301
Telephone: (318) 445-6471
E-mail: bdrell@goldweems.com

## ARTICLE VIII

## <u>ATTACHMENTS</u>

The following documents accompany the Plan:

[√]         Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit A.

[√]         Financial projections, annexed as Exhibit B.

[√]         Liquidation Analysis, annexed as Exhibit C.

[√]         Plan Covenants, annexed as Exhibit D.

Respectfully submitted by:

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

BY:    /s/Bradley L. Drell
        Bradley L. Drell (Bar Roll #24387)
        Heather M. Mathews (Bar Roll #29967)
        P. O. Box 6118
        Alexandria, LA  71307-6118
        Telephone (318) 445-6471
        Fax: (318) 445-6476
        e-mail: bdrell@goldweems.com

**ATTORNEYS FOR DEBTOR IN POSSESSION**